FILED

2014 AUG -8  P 1:56

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| COASTAL MECHANICS CO., INC., | ) |
| Plaintiff, | ) |
| v. | ) Case No. 1:14CV1021 |
| DEFENSE ACQUISITION PROGRAM ADMINISTRATION | ) JCC/JFA |
| SERVE:<br>Hyun-Gyun Chung<br>2-15 2-Ga Yongsin-dong, Yongsan-gu<br>Seoul, Republic of Korea<br>140-833 | ) |
| Defendant. | ) |

## COMPLAINT

COMES NOW the Plaintiff, COASTAL MECHANICS, INC. ("Coastal Mechanics") by counsel, and moves for judgment against the Defendant, DEFENSE ACQUISITION PROGRAM ADMINISTRATION ("DAPA") on the grounds and in the amount as hereinafter set forth.

### Parties and Jurisdiction

1. Plaintiff Coastal Mechanics is, and was at all times mentioned herein, a corporation duly incorporated in the State of Texas with its principal place of business in Houston, Texas.

2. Defendant DAPA is and was at all times herein mentioned, a company incorporated in accordance with the laws of the Republic of Korea. It has a domestic office in

Arlington, Virginia, where it conducts business in Virginia with companies both in Virginia and in other states, including Texas. The domestic office communicated frequently with Coastal Mechanics during the relevant time period regarding the material facts of this case.

3. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 and because the parties are of diverse citizenship and the amount in controversy is greater than $75,000.00.

History of Coastal Mechanics and DAPA

4. Coastal Mechanics is a corporation in Houston, Texas that provides aerospace and defense manufacturing services, including maintenance, repair, and overhaul services for flight equipment for both domestic and international companies. It is a defense contractor that specializes in the manufacture of legacy support systems for foreign militaries.

5. As part of its various services, Coastal Mechanics has supplied the South Korean military with replacement parts for numerous aircraft and other military systems for over thirty years.

6. Coastal Mechanics worked alongside companies such as the Defense Procurement Agency ("DPA"), where the companies enjoyed a productive and resilient business relationship.

7. DPA was Coastal Mechanics' primary client, and as such the South Korean military could count on Coastal Mechanics to supply commodities at uniquely low prices, as well as to supply commodities that similar companies simply could not provide.

8. Because of the unique nature of the products and services Coastal Mechanics provided to DPA, delays in shipments became a regular, and expected, occurrence between the parties.

9. Whenever such a delay occurred, Coastal Mechanics would honor its obligations under its contracts with DPA and pay any liquidated damages or delay penalties assessed. This would cure the matter and the good relationship between the parties continued.

10. DAPA, is a South Korean company primarily focused on providing national defense services and supplying military and defense products. It eventually took over DPA's contracts with Coastal Mechanics, and became Coastal Mechanics' primary client.

11. Coastal Mechanics has been doing contract and supply work with DAPA since their replacement of DPA.

12. Specifically, Coastal Mechanics' role is to supply spare parts for military helicopters to DAPA, a role which had been met with approval and praise from DPA for the duration of the two companies' longstanding relationship.

13. However, beginning in 2006, DAPA began to issue dubious complaints to Coastal Mechanics regarding the quality of Coastal Mechanics' work. Many of these complaints were unfounded and harmful to Coastal Mechanics' reputation.

14. For example, during one shipment, DAPA claimed it only received 71 of 75 ordered items. However, a third party inspector verified a complete shipment.

15. During another shipment, DAPA refused to pay Coastal Mechanics, claiming a part delivered did not meet civilian specifications; however, DAPA had ordered parts to meet military specifications, which were what was delivered.

16. During another shipment, DAPA refused payment, claiming that a set of parts did not have the proper paint coating; however, the paint coating used was within the specification on the part order, and was even of a higher quality grade than ordered.

17. Each time there was a complaint from DAPA, Coastal Mechanics promptly sought to resolve the matter. Coastal Mechanics would:

   a. send letters requesting information about discrepant items in order to cure;

   b. permit return of warranty items in order to replace; and

   c. attend joint inspection sessions to review and resolve all outstanding issues.

18. Additionally, Coastal Mechanics submitted a plan to resolve the discrepancies and continue attempts to satisfy DAPA.

19. During the entirety of this time, and during all correspondence that went back and forth between Coastal Mechanics and DAPA, Coastal Mechanics continued to produce and ship goods owed to DAPA under the various contracts.

20. The parties entered into at least seven contracts: KFX-DPA-51AD18047, KFX-DPA-51AD18208, KFX-DPA-51AD18209, KFX-DAPA-61AD07066, KFX-DAPA-61AD07C72, KFX-DAPA-61AD07B59 and KFX-DAPA-61AD07E16.

<u>DAPA Cancels Contracts with Coastal Mechanics</u>

21. On August 4, 2009, DAPA's Director of International Parts Contracts Team, Hyun-Gyun Chung, sent correspondence to Coastal Mechanics falsely alleging non-performance of certain contractual terms in relation to Contract No. KFX-DAPA-61AD07E16. ("the Parts Contract") and stating the contract would be terminated on **August 21, 2009** unless full performance of the contract occurred before that date. A true and accurate copy of Mr. Chung's letter is attached as Exhibit A.

22. On August 18, 2009, Coastal Mechanics, by Mr. Eitan Levy, responded to these claimed defaults by pointing out that the parts had been delivered correctly and offering to

review these items "at a joint inspection meeting." He also extended the performance bond under the Contract until September 15, 2010. A true and accurate copy of Mr. Levy's response is attached as Exhibit B.

23. On September 2, 2009, DAPA wrote to Coastal Mechanics that it wanted to undergo a joint inspection regarding the Contract in the apparent desire to reconcile the parties' dispute. This statement was made falsely.

24. Upon information and belief, DAPA had already seized the performance bond for another contract, KFX-DAPA-61AD07C72, a few days earlier, in violation of that contract and in contradiction of its express statement that the KFX-DAPA-61AD07C72 contract would not be terminated if performance had occurred.

25. On October 16, 2009, DAPA continued to discuss preparations for a joint inspection. It continued to request that Coastal Mechanics extend its performance bond for all contracts. It also threatened to terminate other contracts ("other Parts Contracts") held by DAPA and Coastal Mechanics for the provision of parts.

26. Coastal Mechanics maintained throughout this correspondence that it performed as required under each contract. However, it learned in the fall of 2009 that performance bonds had been seized in violation of the contracts and that DAPA had unilaterally terminated the Parts Contract, as well as all other contracts at issue.

27. In a November 20, 2009 letter to DAPA, Coastal Mechanics alleged that DAPA had decided to cancel all the pertinent contracts with Coastal Mechanics despite the fact that "shipments were continued all along" and there were no valid complaints with the parts or their

delivery. Essentially, DAPA had fabricated various deficiencies with Coastal Mechanics' work and then terminated them without cause in the fall of 2009.

28. Ultimately, DAPA cancelled all its contracts with Coastal Mechanics without justification. DAPA has withheld payments duly owed to Coastal Mechanics for work conforming to the contracts. Furthermore, DAPA has withheld the performance bonds representing ten percent (10%) of the value of the contracts. These losses total approximately $500,000 in direct damages.

29. DAPA's actions in seizing the performance bonds and not allowing Coastal Mechanics more time to complete their work was a violation of the Parts Contract, the other contracts between the parties and was inconsistent with the parties' course of dealing over a thirty (30) year period. Moreover, the basis for the termination of the Parts Contract was invalid and pretextual, as well as its basis for terminating all other pertinent contracts

30. The effect of these unlawful terminations has been considerable. Coastal Mechanics had for more than a decade geared its entire supply chain towards producing custom-fabricated documents only used by the Korean military. Its entire business model was focused on the Korea market, specifically DAPA, and creating inventory that only had value to that one customer. DAPA was aware of this fact.

31. In addition to the illegal taking of the performance bonds, the termination of the Parts Contracts and all related contracts had a disastrous effect on Coastal Mechanics since it left it with an inventory that had no market value and no possible means to repay its lenders. The termination, and the false basis for the termination, also damaged the company's reputation and cost it potential contracts with other customers in the Republic of Korea. All of these

repercussions were well-known to DAPA, which nonetheless acted rashly in terminating a long-term relationship without any legal basis.

32. Coastal Mechanics has also been damaged by the loss of business in the South Korean market. The unfounded complaints regarding the quality of their work, and the baseless withdrawal of DAPA from their decades-long relationship with Coastal Mechanics, has threatened the unique nature of Coastal Mechanics and cost them future business in the Korean market.

## COUNT I –
## BREACH OF CONTRACT

33. Coastal Mechanics repeats and alleges each and every allegation contained in Paragraphs 1 through 32 of this Complaint as if fully set forth herein.

34. Defendant DAPA and Coastal Mechanics entered into a series of lawfully executed and binding contracts, extending as far back as thirty years with predecessor DPA.

35. Coastal Mechanics consistently performed its tasks and invoiced DPA, and then DAPA, pursuant to the terms of that Contract and without incident for over thirty years.

36. After August 10, 2009, without cause, DAPA ceased payments to Coastal Mechanics for work completed, withheld the performance bonds, and terminated its contracts, all in violation of the terms of the parties' ongoing agreements.

37. Defendant DAPA thereby breached its lawfully executed contracts between itself and Coastal Mechanics.

38. Coastal Mechanics suffered damages in the amount of at least $1,000,000.00, which is the approximate amount of the remaining payments on the outstanding contracts, the

retained performance bond, and the loss of future business with DAPA and other South Korean companies based on Coastal Mechanics' relationship with DAPA.

## PRAYER FOR RELIEF

WHEREFORE, COASTAL MECHANICS CO. INC., respectfully prays that this Court:

1. Award compensatory damages in the amount of $1,000,000.00;

2. Award prejudgment and post-judgment interest, costs and such other relief as the Court deems appropriate.

                                COASTAL MECHANICS CO., INC.
                                Eitan Levy, President

                                By: _____
                                          Counsel

J. Chapman Petersen, Esq., VSB #37225
Jason F. Zellman, Esq., VSB #77499
Tashina M. Harris, Esq., VSB #86171
SUROVELL ISAACS PETERSEN & LEVY PLC
4010 University Drive, 2nd Floor
Fairfax, VA 22030
Telephone 703-277-9704
Facsimile 703-591-9285
Counsel for Coastal Mechanics, Inc.