IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

COASTAL MECHANICS CO., INC.,      )
                                  )
                                  )
     Plaintiff,                   )
                                  )
        v.                        )        1:14cv1021(JCC/JFA)
                                  )
DEFENSE ACQUISITION PROGRAM       )
ADMINISTRATION,                   )
                                  )
     Defendant.                   )

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant Defense Acquisition Program Administration's ("DAPA") Motion to Dismiss for Improper Venue.  [Dkt. 9.]  For the following reasons, the Court will grant the motion.

**I. Background**

Coastal Mechanics, Co., Inc. ("Coastal Mechanics") is an aerospace and defense manufacturing services company specializing in the manufacture of legacy support systems for foreign militaries.  (Compl. [Dkt. 1] ¶ 4.)  According to Plaintiff, DAPA is a South Korean "company" focused on providing national defense services and supplying military and defense products.  (*Id.* ¶ 10.)  DAPA contends that it is an agency of the Republic of Korea ("ROK" or "South Korea") tasked with, among other things, procuring parts and supplies for the ROK

1

military.   (Def.'s Reply [Dkt. 13] at 3; Def.'s Reply [Dkt. 13],

Ex. A, ¶ 4 [hereinafter "Choi Decl."].)   Coastal Mechanics

supplied spare parts for military helicopters to DAPA.   (Compl.

¶ 12.)[1]

          In 2009, problems arose in the relationship between

Coastal Mechanics and DAPA.   The complaint alleges that in a

November 20, 2009 DAPA "decided to cancel all the pertinent

contracts with Coastal Mechanics[.]"   (*Id.* ¶ 27.)   The complaint

further alleges that "[u]ltimately, DAPA cancelled all its

contracts with Coastal Mechanics without justification."   (*Id.* ¶

28.)   Paragraph 20 of the Complaint identifies "at least seven

contracts" that were entered into by the parties.   (*Id.* ¶ 20.)

Coastal Mechanics makes specific allegations about two of the

contracts – KFX-DAPA-61AD07E16 ("E16 contract") and KFX-DAPA-

61AD07C72 ("C72 contract.")   (*Id.* ¶¶ 21, 24.)[2]   As to the E16

contract, Coastal Mechanics alleges DAPA falsely claimed non-

performance of certain contract terms.   (*Id.* ¶ 21.)   Coastal

Mechanics claims the C72 contract was also breached by DAPA

because DAPA impermissibly "seized the performance bond for the

---

[1] At some point prior to 2006, DAPA took over contracts previously held by the
Defense Procurement Agency ("DPA").   (Compl. ¶ 10.)   Coastal Mechanics had
been supplying parts to DPA for approximately thirty years.   (*Id.* ¶ 5.)   The
complaint does not specify when DAPA assumed these contracts.   Some of these
assumed contracts are the ones at issue here.
[2] At the motion hearing, Coastal Mechanics' counsel confirmed that the
Complaint is focused on these two contracts.

contract." (*Id.* ¶ 24.)  Both contracts have identical choice-

of-law and forum-selection clauses that read as follows:

> **25. Governing Law:** The formation, validity and the performance of this Contract shall be governed by the laws of the Republic of Korea.  Nothing in this Contract shall be interpreted against the "Act on Contract to which the State is a Party."

> **26. Jurisdiction:** In the event of disputes, controversies, or disagreements between Seller and Buyer arising in connection with this Contract ("the Dispute"), the parties shall negotiate in good faith for at least thirty (30) days from the date of the occurrence.  However, if the parties fail to reach settlement or resolution after thirty days, any Dispute shall be finally settled by litigation in Seoul Central District Court, Republic of Korea.

(Def.'s Mem. in Supp. [Dkt. 9], Exs. 1 & 2, ¶¶ 25, 26.)

Coastal Mechanics filed a one-count complaint in this

Court alleging breach of contract.  [Dkt. 1.]  DAPA timely filed

the instant motion, alleging that venue is improper under

Federal Rule of Civil Procedure 12(b)(3) because the contracts

at issue contain a forum-selection clause that mandates this

action must be litigated in South Korea.  (Def.'s Mot. [Dkt. 8]

at 1.)  Having been fully briefed and argued, this motion is

ripe for disposition.

## II. Analysis

Federal Rule of Civil Procedure 12(b)(3) permits a

defendant to raise improper venue in a pre-answer motion.  DAPA

filed the instant motion, styled as a "Defendant's Motion to

Dismiss Pursuant to FRCP 12(b)(3)," raising as its only ground

for a venue challenge the forum-selection clause in the two

contracts. (*See* Def.'s Mem. in Supp. [Dkt. 9].) Not once in

the motion or the memorandum in support did DAPA assert that the

statutory venue provisions were not satisfied. In opposition,

Coastal Mechanics argues that a motion to dismiss for improper

venue under Rule 12(b)(3) is not the proper procedural mechanism

to enforce a forum-selection clause. (Pl.'s Opp. [Dkt. 12] at

3-5.) Coastal Mechanics is correct. "Rule 12(b)(3) allow[s]

dismissal only when venue is 'wrong' or 'improper.' Whether

venue is 'wrong' or 'improper' depends exclusively on whether

the court in which the case was brought satisfies the

requirements of federal venue laws, and those provisions say

nothing about a forum-selection clause." *Atl. Marine Constr.*

*Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568,

577 (2013). In its reply brief, DAPA raises, for the first

time, the argument that venue is improper under 28 U.S.C. §

1391. Leaving aside the Court's frustration that a self-styled

venue motion makes no proper arguments about venue, the Court

will consider whether (a) venue is proper in this case and (b)

the appropriate remedy, considering the forum-selection clause.

**A. Venue**

4

Before turning to the substantive issue of whether
venue is proper, the Court must make a threshold determination
as to the legal status of DAPA, as that status controls which
subsection of the venue statute applies.  Specifically, the
Court must decide whether DAPA is a private company as Coastal
Mechanics implies (*see* Compl. ¶ 2) or whether it is an arm of
the South Korean government, as DAPA claims (*see* Def.'s Reply &
Choi Decl.). Under Rule 12(b)(3) the Court is allowed to freely
consider evidence outside the pleadings.  *Silo Point II LLC v.*
*Suffolk Const. Co., Inc.*, 578 F. Supp. 2d 807, 809 (D. Md.
2008).  In addition, when resolving a motion to dismiss under
Rule 12(b)(3), "the pleadings are not accepted as true, as would
be required under a Rule 12(b)(6) analysis."  *Id.* (citation and
internal quotation marks omitted).  Nevertheless, "[i]n deciding
a motion to dismiss, all inferences must be drawn in favor of
the plaintiff, and the facts must be viewed as the plaintiff
most strongly can plead them."  *Id.*

Coastal Mechanics alleges that DAPA "is a company
incorporated in accordance with the laws of the Republic of
Korea."  (Compl. ¶ 2.)  It further alleges that DAPA has a
domestic office in Arlington, Virginia, "where it conducts
business in Virginia with companies both in Virginia and in
other states, including Texas."  (*Id.*)  This office
"communicated frequently with Coastal Mechanics during the

relevant time period regarding the material facts of this case."
(*Id.*)  Attached to the complaint are two exhibits –
correspondence from the director of DAPA, printed on letterhead
reading "DAPA Republic of Korea" with a South Korean address
(Ex. A) and a letter from a representative of Coastal Mechanics,
addressed to DAPA's director in South Korea (Ex. B).

In contrast to Coastal Mechanics' assertions that DAPA
is a private company with a domestic office in Virginia, DAPA
contends that it is an arm of the South Korean government
headquartered in South Korea.  (Choi Decl. ¶¶ 4-5.)  The ROK
does own a building in Arlington, Virginia, which is referred to
as "Korean Embassy #2."  (*Id.* ¶ 6.)  Korean Embassy #2 contains
members of many branches of the ROK armed forces, including some
DAPA employees.  (*Id.* ¶ 8.)  Outside of the few DAPA personnel
located at Korean Embassy #2, DAPA does not have any other
personnel in Virginia.  (*Id.* ¶ 9.)  DAPA does not have any other
offices or facilities in Virginia.  (*Id.*)

The Court credits DAPA's description of its legal
status.  First, it is in the best position to know whether it is
or is not an arm of the South Korean government.  Second,
Coastal Mechanics' own exhibits support the proposition that
DAPA is an arm of the South Korean government.  Therefore, the

appropriate venue subsection governing this case is 28 U.S.C. §

1391(f).[3]

Where, as here, there is a civil action brought

against a foreign state,[4] the action may be brought in

> (1) any judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated;
>
> (2) in any judicial district in which the vessel or cargo of a foreign state is situated, if the claim is asserted under section 1605(b) of this title;;
>
> (3) in any judicial district in which the agency or instrumentality is licensed to do business or is doing business, if the action is brought against an agency or instrumentality of a foreign state as defined in section 1603(b) of this title; or
>
> (4) in the United States District Court for the District of Columbia if the action is brought against a foreign state or political subdivision thereof.

28 U.S.C. § 1391(f).  When a party challenges venue, the Court

must decide which, if any, of venue subsections apply to the

case.  If the case fits one of the subsections, venue is proper;

---

[3] At the motion hearing, counsel for Coastal Mechanics conceded that § 1391(f) was the correct venue subsection to apply.

[4] "Foreign state" is defined as a "political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b)."  28 U.S.C. § 1603(a).  "An agency or instrumentality of any foreign state means any entity  – (1) which is a separate legal person, corporate or otherwise, and (2) which is an organ of a foreign state or a political subdivision thereof . . . and (3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (e) of this title, nor created under the laws of any third country."  Under this definition, DAPA is an instrumentality of a foreign state, and therefore § 1391(f) applies.

if not, the action must be dismissed or transferred under 28

U.S.C. § 1406(a).  *Atl. Marine*, 134 S. Ct. at 577.

None of these subsections apply here.  Despite Coastal

Mechanics' assertions to the contrary, it does not appear that

there was any communication between Korean Embassy #2 and

Coastal Mechanics regarding this contract.  In fact, Coastal

Mechanics has put forward exhibits undermining its own position.

As the claim here is not brought under 28 U.S.C. § 1605(b),

subsection (2) is inapplicable.  Finally, DAPA is not licensed

to do business in the Commonwealth of Virginia.  *See*

Commonwealth of Virginia, State Corporation Commission,

https://sccefile.scc.virginia.gov/Find/Business.  Therefore,

venue in the Eastern District of Virginia is improper.

**B. Remedy**

This Court must decide the appropriate remedy.  Under

28 U.S.C. § 1406, where venue is wrong or improper, a district

court shall dismiss the case, or "if it be in the interest of

justice, transfer such case to any district or division in which

it could have been brought."  28 U.S.C. § 1406(a).[5]  Ostensibly,

this case could have been brought in the United States District

Court for the Southern District of Texas, as this case concerns

a contract dispute, and contract negotiations presumably took

---

[5] Section 1406(a) in its entirety reads: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

8

place in part at Coastal Mechanics' headquarters in Houston,
Texas. However, the Court must consider the effect of the
forum-selection clause. The Court must determine whether the
forum-selection clause is mandatory and, if so, whether it is
enforceable. If the answer to both of these inquiries is in the
affirmative, then this case must be dismissed rather than
transferred.

It is unclear whether the body of law specified in the
contract – here, South Korean law – or federal law governs
whether the clause is mandatory. The Second Circuit has held
that where there is a choice-of-law provision in a contract,
that body of law governs whether the forum-selection clause is
mandatory. *Martinez v. Bloomberg LP*, 740 F.3d 211, 218 (2d Cir.
2014) ("Hence, if we are called upon to determine whether a
particular forum-selection clause is mandatory or permissive . .
. or whether its scope encompasses the claims or parties
involved in a certain suit, we apply the law contractually
selected by the parties."). However, it appears that the Fourth
Circuit applies federal law to determine whether the clause is
mandatory. *See Eisaman v. Cinema Grill Sys., Inc.*, 87 F. Supp.
2d 446, 459 (4th Cir. 1999) ("Prior to conducting the *Bremen*
analysis, the court must determine whether the forum-selection
clause at issue is mandatory or permissive. If the clause is
merely permissive, the action will not be dismissed; if

mandatory, it will be enforced as required by *Bremen*.") (citing

cases from other circuits).  As the parties have not briefed the

applicability of South Korean law and maintained at the motion

hearing that federal law governs the question of whether the

clause is mandatory, this Court will apply federal law to

resolve this issue.

A mandatory forum-selection clause is "one containing

clear language showing that jurisdiction is appropriate only in

the designated forum."  *Davis Media Grp., Inc. v. Best Western

Int'l, Inc.*, 302 F. Supp. 2d 464, 467 (D. Md. 2004).  It is

clear that the language of the contracts necessitate that all

actions be brought in South Korea.  Paragraph 26 of the E16 and

C72 contracts state that "[i]f the parties fail to reach

settlement or resolution [after the thirty day negotiation

period], any Dispute <u>shall</u> be finally settled by litigation in

Seoul Central District Court, Republic of Korea."  (Exs. 1 & 2,

¶ 26.)  Black's Law Dictionary defines "shall" as "has a duty

to; more broadly, is required to."  <u>Black's Law Dictionary</u> 1407

(8th ed. 1999).  There is no mistaking the plain import of those

terms: that any and all disputes must be resolved in Seoul

Central District Court.  Both parties signed the contracts and

therefore are bound by these terms.  (*See* Def. Mem. in Supp.,

Exs. 1 & 2, p. 2.)  Therefore, the requirement to litigate in

South Korea is mandatory.

Coastal Mechanics reads the forum-selection clause as requiring at least thirty-days of good-faith negotiation before the forum-selection clause may be invoked.  (Pl.'s Opp. at 5.) According to Coastal Mechanics, DAPA has waived the forum-selection clause because it failed to undertake such negotiations, citing *Kettler Int'l v. Starbucks, Corp.*, -- F. Supp. 3d --, 2014 WL 5461842, at *8 (E.D. Va. Oct. 21, 2014). (*Id.* at 5-6.)  Both the argument and the case in support are inapposite.

*Kettler* states that a party may waive enforcement of a forum-selection clause, "but such waiver cannot be found lightly."  *Kettler*, 2014 WL 5461842, at *8 (citations and internal quotation marks omitted).  A forum-selection clause will not be deemed waived unless "(1) the party invoking the clause has taken action inconsistent with it or has delayed its enforcement, and (2) the other party would be prejudiced by its enforcement."  *Id.* (citations and internal quotations omitted). Generally, these conditions are satisfied when a party disregards a forum-selection clause and sues in an unauthorized forum.  *Id.* (citation and internal quotation marks omitted).

Here, the parties are in disagreement about whether there has been thirty days of good-faith negotiation prior to this litigation.  Even assuming, without deciding, that there were no negotiations, such a lack of negotiations is not enough

11

to show that DAPA has waived the forum-selection clause.  A fair

reading of the clause is that any dispute that still remains

after thirty days of negotiation is to be resolved in Seoul

Central District Court.  If there has not been the thirty-day

negotiation period, then the case might not be ripe for

adjudication.  But that is a determination for the Seoul Central

District Court.  In other words, the thirty-day negotiating

period is not a condition precedent to invoking the forum-

selection clause.  Regardless of whether there has been thirty

days of negotiation, any litigation must be brought in South

Korea.

As the clause is mandatory, the Court must decide if

it is enforceable.  Federal law governs enforceability, *see*

*Martinez*, 740 F.3d at 217, and as a court sitting in diversity,

this Court applies the law of the forum state.  *See Klaxon Co.*

*v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  Virginia

law states that contractual provisions limiting the place or

court where potential actions between the parties may be brought

are *prima facie* valid and should be enforced, unless the party

challenging enforcement establishes that such provisions are

unfair or unreasonable or are affected by fraud or unequal

bargaining power.  *Paul Bus. Sys., Inc. v. Canon U.S.A., Inc.*,

397 S.E.2d 804, 807 (Va. 1990).  There is no evidence that the

clause was procured by fraud or unequal bargaining power.  *See*

*Zaklit v. Global Linguist Solutions, LLC*, No. 1:14cv314, 2014 WL
4656204, at * 4 (E.D. Va. Sept. 16, 2014) (collecting cases and
stating that fraud and unequal bargaining power must go to the
procurement of the clause, not the contract as a whole).

Neither is it unreasonable to enforce the forum-
selection clause.  First, both parties are sophisticated
business entities that entered into a series of contracts over
many years.  Second, the choice-of-law provision mandates that
South Korean law is to be applied to resolve any disputes.  A
South Korean forum is better equipped than a U.S. federal
district court to undertake this analysis.  Finally, Coastal
Mechanics claims that it would be a "great inconvenience" in
litigating in South Korea because many of its witnesses would be
forced to travel.  (Pl.'s Opp. at 9.)  However, "mere
inconvenience and expense are insufficient to render enforcement
of a forum-selection clause unreasonable."  *Rice Contracting
Corp. v. Callas Contractors, Inc.*, No. 1:08cv1163, 2009 WL
21597, at *4 (E.D. Va. Jan. 2, 2009).  Therefore, the Court
finds that the forum-selection clause is enforceable.

Coastal Mechanics argues that a South Korean forum is
"hardly impartial," as DAPA is an executive agency of the South
Korean government, and thus it would be unfair to require it to
litigate in South Korea.  (Pl.'s Opp. at 10.)  This Court
declines to cast dispersions on a branch of a sovereign nation's

government and finds that it would not be fundamentally unfair

to require Coastal Mechanics to perform its contractually

obligated duty.   Therefore, since the forum-selection clause is

mandatory and enforceable, this Court will dismiss the case.

### IV. Conclusion

For the reasons set forth above, the Court will grant

DAPA's motion to dismiss.   An appropriate order will follow.

|                        |                       /s/                        |
| ---------------------- | ------------------------------------------------- |
| January 13, 2015       | James C. Cacheris                                 |
| Alexandria, Virginia   | UNITED STATES DISTRICT COURT JUDGE                |